UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

DYNEL BIENEMY                                    CIVIL ACTION

VERSUS                                           NO. 11-616

MICHAEL J. ASTRUE, COMMISSIONER                  SECTION "N" (2)
OF SOCIAL SECURITY ADMINISTRATION


**FINDINGS AND RECOMMENDATION**

Plaintiff, Dynel Bienemy, seeks judicial review pursuant to Section 405(g) of the

Social Security Act (the "Act") of the final decision of the Commissioner of the Social

Security Administration (the "Commissioner"), denying plaintiff's claim for disability

insurance benefits ("DIB") and supplemental security income benefits ("SSI") under

Titles II and XVI, respectively, of the Act. 42 U.S.C. §§ 405(g), 423, 1381a. This matter

was referred to a United States Magistrate Judge pursuant to 28 U.S.C. § 636(b) and

Local Rule 73.2(B).

I.      PROCEDURAL HISTORY

Bienemy filed applications for DIB and SSI on February 4, 2009, alleging

disability since October 30, 2008, due to lupus, chronic pain, shortness of breath and

blistering skin upon exposure to sunlight. (Tr. 86-87, 91-93, 112-13). After her

applications were denied, Bienemy requested a hearing before an Administrative Law

Judge ("ALJ"), which was held on November 6, 2009. (Tr. 25-46). On February 17,

2010, the ALJ issued a decision denying plaintiff's applications for benefits. (Tr. 12-20). After the Appeals Council denied review on January 20, 2011, the ALJ's decision became the final decision of the Commissioner for purposes of this court's review. (Tr. 1-3).

This court granted plaintiff's unopposed "Motion to Correct the Transcript" to include six pages of medical records from the Louisiana State University ("LSU") Medical Center, Record Doc. No. 17, which were not in the evidentiary record that the ALJ had considered. Citing Higginbotham v. Barnhart, 405 F.3d 332, 334 (5th Cir. 2005), Bienemy asserted in her motion that the Appeals Council had "considered" these medical records because she had summarized them in her brief to the Appeals Council and because the Appeals Council stated that it had "considered the reasons you disagree with the [ALJ's] decision," but "found that this information does not provide a basis for changing the [ALJ's] decision." (Tr. 1-2). Based on the Fifth Circuit's holding in Higginbotham that evidence submitted to and considered by the Appeals Council becomes part of the Commissioner's final decision, and because defendant did not oppose Bienemy's motion, I granted the motion. Record Doc. No. 19.

However, upon closer review of the administratI've record, it became clear that plaintiff had neither submitted the evidence to the Appeals Council nor pointed out to the Appeals Council that some of the evidence she summarized in her brief was new and had

not been considered by the ALJ. (Tr. 150-61). The effect of Bienemy's omissions was twofold: (1) at the administrative level, the Appeals Council did not consider the new evidence, which it did not have, and (2) in this court, Bienemy avoided having to meet the more stringent legal requirements to suppleminute entry the record on appeal by showing that the omitted evidence was new and material, and that she had good cause for her failure to include it in the administrative record, so that the court should remand the matter to the Commissioner for new factual findings. 42 U.S.C. § 405(g); Hunter v. Astrue, 283 F. App'x 261, 262 (5th Cir. 2008) (citing Latham v. Shalala, 36 F.3d 482, 483 (5th Cir. 1994)); Joubert v. Astrue, 287 F. App'x 380, 383 (5th Cir. 2008) (citing Ripley v. Chater, 67 F.3d 552, 555 (5th Cir. 1995)); Martinez v. Astrue, 252 F. App'x 585, 587 (5th Cir. 2007) (citing 42 U.S.C.A. § 405(g); Haywood v. Sullivan, 888 F.2d 1463, 1471 (5th Cir. 1989)). Because Bienemy did not argue that the evidence is new and material and that she had good cause for her failure to include it in the administrative record, the Commissioner did not have a chance to respond to any such argument.

Therefore, I ordered Bienemy to file a supplemental memorandum to address whether the omitted evidence is new and material and whether she had good cause not to include it in the administrative record. Record Doc. No. 21. In her supplemental memorandum, plaintiff conceded that the six pages of omitted medical records were neither new nor material. Record Doc. No. 22. Accordingly, this court's review of the

record in this case is limited to the administrative transcript filed by defendant, Record Doc. No. 15, and does <u>not</u> include any of the medical records attached to plaintiff's motion to correct the transcript, Record Doc. No. 17-1, which are not contained in the administrative record.

## II.  STATEMENT OF ISSUES ON APPEAL

Plaintiff contends that the ALJ made the following errors:

A.  The ALJ erred in assessing the weight given to the opinion of plaintiff's treating physician.

B.  The ALJ erred in assessing plaintiff's credibility.

## III.  ALJ'S FINDINGS RELEVANT TO ISSUES ON APPEAL

The ALJ made the following relevant findings:

1.  Bienemy has not engaged in substantial gainful activity since the alleged onset date of October 30, 2008.

2.  She has a severe impairment consisting of lupus.

3.  Plaintiff has the residual functional capacity to perform the full range of light work.

4.  Although Bienemy's medically determinable impairments could reasonably be expected to cause some of the alleged symptoms, her statements concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent they are inconsistent with the above residual functional capacity assessment.

5.  She is not capable of performing her past relevant work as a sitter/certified nursing assistant.

6. Based on her residual functional capacity for the full range of light work, a finding of "not disabled" is directed by Medical-Vocational Rule 202.18.

(Tr. 12-19).

## IV. ANALYSIS

### A. Standards of Review

The function of this court on judicial review is limited to determining whether there is substantial evidence in the record to support the final decision of the Commissioner as trier of fact and whether the Commissioner applied the appropriate legal standards in evaluating the evidence. Perez v. Barnhart, 415 F.3d 457, 461 (5th Cir. 2005); Waters v. Barnhart, 276 F.3d 716, 716 (5th Cir. 2002); Loza v. Apfel, 219 F.3d 378, 390 (5th Cir. 2000). Substantial evidence is more than a scintilla but less than a preponderance and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. Richardson v. Perales, 402 U.S. 389, 401 (1971); Perez, 415 F.3d at 461; Loza, 219 F.3d at 393. This court may not "reweigh the evidence in the record, try the issues de novo or substitute its judgment for the Commissioner's, even if the evidence weighs against the Commissioner's decision." Newton v. Apfel, 209 F.3d 448, 452 (5th Cir. 2000). The Commissioner, rather than the courts, must resolve conflicts in the evidence. Id.

The ALJ is entitled to make any finding that is supported by substantial evidence, regardless whether other conclusions are also permissible. See Arkansas v. Oklahoma, 503 U.S. 91 (1992). Despite this court's limited function, it must scrutinize the record in its entirety to determine the reasonableness of the decision reached and whether substantial evidence supports it. Perez, 415 F.3d at 461. Any findings of fact by the Commissioner that are supported by substantial evidence are conclusive. Id.; Newton, 209 F.3d at 452; Martinez v. Chater, 64 F.3d 172, 173 (5th Cir. 1995).

To be considered disabled and eligible for SSI or DIB,[1] plaintiff must show that she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. §§ 423(d)(1)(A). The Commissioner has promulgated regulations that provide procedures for evaluating a claim and determining disability. 20 C.F.R. §§ 404.1501 to 404.1599 & appendices, §§ 416.901 to 416.998 (2008). The regulations include a five-step evaluation process for determining whether an impairment prevents a person from engaging in any substantial gainful activity. Id. §§ 404.1520, 416.920;

---

[1]The relevant law and regulations governing a claim for DIB are identical to those governing a claim for SSI. Greenspan v. Shalala, 38 F.3d 232, 236 (5th Cir. 1994); Hollis v. Bowen, 837 F.2d 1378, 1382 n.3 (5th Cir. 1988).

Perez, 415 F.3d at 461; Waters, 276 F.3d at 716; Loza, 219 F.3d at 393.[2]  The five-step

inquiry terminates if the Commissioner finds at any step that the claimant is or is not

disabled.  Perez, 415 F.3d at 461.

The claimant has the burden of proof under the first four parts of the inquiry.  If

she successfully carries this burden, the burden shifts to the Commissioner to show that

other substantial gainful employment is available in the national economy that the

claimant is capable of performing.  When the Commissioner shows that the claimant is

capable of engaging in alternative employment, the burden of proof shifts back to the

claimant to rebut this finding.  Id.; Newton, 209 F.3d at 453.

---

[2]The five-step analysis requires consideration of the following:

First, if the claimant is currently engaged in substantial gainful employment, he or she is found not disabled.  20 C.F.R. §§ 404.1520(b), 416.920(b).

Second, if it is determined that, although the claimant is not engaged in substantial employment, he or she has no severe mental or physical impairment which would limit the ability to perform basic work-related functions, the claimant is found not disabled.  Id. §§ 404.1520(c), 416.920(c).

Third, if an individual's impairment has lasted or can be expected to last for a continuous period of twelve months and is either included in a list of serious impairments in the regulations or is medically equivalent to a listed impairment, he or she is considered disabled without consideration of vocational evidence.  Id. §§ 404.1520(d), 416.920(d).

Fourth, if a determination of disabled or not disabled cannot be made by these steps and the claimant has a severe impairment, the claimant's residual functional capacity and its effect on the claimant's past relevant work are evaluated.  If the impairment does not prohibit the claimant from returning to his or her former employment, the claimant is not disabled.  Id. §§ 404.1520(e), 416.920(e).

Fifth, if it is determined that the claimant cannot return to his or her former employment, then the claimant's age, education, and work experience are considered to see whether he or she can meet the physical and mental demands of a significant number of jobs in the national economy.  If the claimant cannot meet the demands, he or she will be found disabled.  Id. §§ 404.1520(f)(1), 416.920(f)(1).  To assist the Commissioner at this stage, the regulations provide certain tables that reflect major functional and vocational patterns.  When the findings made with respect to a claimant's vocational factors and residual functional capacity coincide, the rules direct a determination of disabled or not disabled.  Id. § 404, Subpt. P, App. 2, §§ 200.00-204.00, 416.969 ("Medical-Vocational Guidelines").

The court "weigh[s] four elements of proof when determining whether there is substantial evidence of disability: (1) objective medical facts; (2) diagnoses and opinions of treating and examining physicians; (3) the claimant's subjective evidence of pain and disability; and (4) [her] age, education, and work history." Martinez, 64 F.3d at 174.

B.    Factual Background

Bienemy testified that her alleged disability onset date is October 30, 2008, because she went to the hospital on that date with pain all over her body, inability to bend over or stand up, and falling "all the time." She said she had no symptoms before that date. (Tr. 30). She testified that when she went to the emergency room, she was told that she already had lupus and that it may have gotten into her blood stream. She stated that she later followed up at the clinic, where she learned she had a connective tissue muscle disease and fibromyalgia.

Plaintiff said that Dr. Espinoza at the LSU Medical Center diagnosed connective tissue disease and fibromyalgia about three months before the hearing. She testified that she had received prescriptions for "trenadone"[3] for pain, Vicodin[4] for breakthrough pain

---

[3]This is probably a transcription error. The medical records reveal that Bienemy was prescribed tramadol, a pain reliever, during August to October 2009. (Tr. 147, 238, 267, 269).

[4]"Vicodin is a combination of acetaminophen (Tylenol) and the opioid pain medication hydrocodone used to treat moderate to moderately severe pain." PDRhealth (2011), http://www.pdrhealth.com/drugs/vicodin.

and prednisone,[5] and that she has not received any other treatment for these conditions. (Tr. 31). She said she sees the doctor every month.

Bienemy stated that she stopped working in November 2008. She said that after she stopped working for Volunteers of America, she worked for two different companies for about one month and two weeks, respectively. She said both jobs were the same as her prior job, that is, working one-on-one with clients, but she could not work because she was in constant pain. She testified that she has been in constant pain for about one and one-half years. She rated her pain as the maximum 10 on a scale of 0 to 10, even with medication. (Tr. 32-33).

Plaintiff said she went to the twelfth grade, but did not graduate from high school. She stated that she graduated from American College as a certified nursing assistant and from Elaine P. Nunez College for culinary arts. She said she worked for a while at a Pizza Hut in the mid-1980s, but her primary job was as a certified nursing assistant for Volunteers of America, working one-on-one with clients. She said she is still certified. (Tr. 33).

Bienemy testified that she lives with her 14-year-old son and a male friend who does the cooking and laundry. She said she does no household chores and only sits at the

---

[5]Prednisone is a steroid "used to reduce inflammation and alleviate symptoms in a variety of disorders, including rheumatoid arthritis and severe cases of asthma." Id., http://www.pdrhealth.com/drugs/prednisone.

table.  She testified that she can brush her teeth and dress herself on good days, but needs assistance on days when she has bad pain.  She stated that she has no pets or hobbies.  (Tr. 34-35).  She said she can read and write, has a current driver's license and drives a 1994 Mercury Saber with an automatic transmission.  She said that her 23-year-old son drove her to the hearing.

Plaintiff stated that she has trouble walking because of constant pain that makes her walk slowly and because she gets short of breath if she walks far.  She said she can walk about one block before she needs to stop and that she has problems with sitting "every once in a while."  (Tr. 35-36).  She testified that the heaviest thing she can lift is a gallon of milk.  She stated that she has five grandchildren who visit her and run around while being supervised by their parents.  She said she reads to the children and watches television with them, but she cannot hold them.  She stated that she does not socialize outside her family and does not belong to any groups.  (Tr. 36-37).

Bienemy testified that she sometimes has problems with her back, consisting of severe pain at her tailbone.  She said she has difficulty raising her arms overhead and cannot do it for long.  She is right-handed.  Plaintiff said she has recently had problems with low blood pressure and has trouble focusing on the television.  She testified that she does not have a savings or checking account and that the friend with whom she lives pays all the household bills.  (Tr. 37).

Upon questioning by her attorney, plaintiff stated that she stopped working after an incident when she went with a client and the client's mother to the French Quarter. She stated that they had walked from Elysian Fields Avenue to Harrah's Casino[6] and that she was unable to walk back because she was in unbearable pain. She said that, when she got back to the client's house, she had to sit in the dark and was in so much pain that she had to leave. She testified that she could not work any more after that.

Bienemy stated that she sees Drs. Lata and Espinoza, and that one or both of them told her not to lift more than five pounds. (Tr. 38-39). She said that she first saw Dr. Lata about two months ago on a referral from her dermatologists and has seen him once or twice.

Plaintiff stated that, during a typical day, she sits at the kitchen table looking outside and that she sleeps about five hours because of her pain medication. She testified that the medication does not help her pain, but makes her sleep. (Tr. 39). She said she cannot open a can of soda because her hands hurt unbearably all the time and swell at least twice a week. She said she can zip a zipper, but cannot use buttons. She stated that she cannot bend over very far without falling on her face. She testified that she can sit

---

[6]The transcript says from "Legion Field to the Havass Casino." I have corrected these incorrect street and casino names based on my knowledge of New Orleans. According to mapquest.com, the walking distance that plaintiff mentioned is about 1.1 miles.

for about an hour before her tailbone and hip go numb. She said the pain is not always in the same place, but travels all over her body. (Tr. 40).

Bienemy testified that she used to cook, clean and do laundry, but now cannot do any of that. She stated that her problems came on gradually, but in October 2008 she was in severe pain and went to University Hospital. She said that her doctors previously thought her symptoms were caused by lupus, but then her doctor told her that her type of lupus should only cause skin lesions, not pain. She stated that she found out later that she has a connective tissue disease and fibromyalgia, which cause the pain. (Tr. 41-42).

C.    Vocational Expert Testimony

A vocational expert, Deborah A. Bailey, testified at the hearing that plaintiff's past relevant work as a certified nursing assistant was semi-skilled at a medium exertional level. The ALJ posed a hypothetical of an individual with plaintiff's age, education and past relevant work with the residual functional capacity to perform at least light work. Bailey testified that such a person could not perform the job of certified nursing assistant. (Tr. 42). Bailey testified that the hypothetical person could perform unskilled, light jobs. She gave non-exhaustive examples of janitor/cleaner or cashier, both of which she said are available in the state and national economies. (Tr. 43).

Plaintiff's attorney modified the hypothetical to include an ability to sit, stand or walk for one hour or less during an eight-hour work day. Bailey testified that this

restriction would eliminate all work.  (Tr. 43-44).  Plaintiff's attorney then asked if the

hypothetical person could work if her concentration, persistence and pace were limited

by pain two-thirds of the time while working, and the vocational expert said that no jobs

would exist for such an individual.  (Tr. 44).  Finally, Bailey testified that a hypothetical

person who had to lie down for five hours in an eight-hour work day would not be able

to perform any job.  (Tr. 45).

D.    Medical Evidence

I have reviewed the medical records in evidence and the ALJ's summary of the

medical evidence.  (Tr. 16-17).  I find the ALJ's summary of the medical evidence

substantially correct and incorporate it herein by reference, with the modifications,

corrections and highlights noted below.

E.    Plaintiff's Appeal

1.    The ALJ did not err in assessing the weight given to the opinion of
plaintiff's treating physician.

Bienemy argues that the ALJ erred by failing to give controlling weight to the

opinion of her treating physician, Suman Lata, M.D., a rheumatology specialist at LSU

Medical Center; failing to evaluate his opinion properly, even if it was not entitled to

controlling weight; and improperly accepting the findings of the initial agency decision-

maker, who is not a medical professional.

At the fourth step of the sequential evaluation, the ALJ must determine, based on all of the relevant medical and other evidence in the record, the claimant's residual functional capacity, which is her ability to do physical and mental tasks on a sustained basis despite limitations from her impairments. <u>Cline v. Astrue</u>, 577 F. Supp. 2d 835, 847-48 (N.D. Tex. 2008) (citing <u>Perez</u>, 415 F.3d at 462; 20 C.F.R. § 416.945(a)(3)). In determining residual functional capacity, "the Commissioner must consider all of a claimant's impairments, including those that are not severe." <u>Giles v. Astrue</u>, 433 F. App'x 241, 245 (5th Cir. 2011) (citing 20 C.F.R. §§ 404.1520(e), 404.1545).

The ALJ found that Bienemy has the residual functional capacity to perform the full range of light work,[7] but was unable to return to her past relevant work as a certified nursing assistant. Based on that residual functional capacity, the ALJ held at the fifth step that a finding of "not disabled" is directed by Medical-Vocational Rule 202.18. <u>See</u> 20 C.F.R. Pt. 404, Subpt. P, App. 2, § 202.18 (directing a finding of "not disabled" for a younger individual with a limited education and non-transferable, semi-skilled skills who is capable of performing the full range of light work).

---

[7]"Light work" involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. A job is also in this category if it involves very little lifting but requires "a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls." 20 C.F.R. § 404.1567(a). To be considered capable of performing a full or wide range of light work, the claimant "must have the ability to do substantially all of these activities." <u>Id.</u>

Bienemy relies on a checklist form "Fibromyalgia Physical Evaluation," which Dr. Lata completed on November 4, 2009, two days before the administrative hearing. (Tr. 271-72). Dr. Lata checked off on the form that plaintiff has all 18 of the trigger points that, according to the preprinted instructions on the form, are diagnostic criteria of fibromyalgia.[8] The physician circled preprinted answers indicating that Bienemy's pain is constant; that she can either sit, stand or walk for only one hour or less in an eight-hour work day; and that pain markedly limits her concentration, persistence and pace. If the ALJ accepted the functional limitations on sitting, standing and/or walking that Dr. Lata assigned, plaintiff would not be able to perform even sedentary work.[9]

Bienemy argues that the ALJ was required to give controlling weight to Dr. Lata's opinion because he is a treating physician, his opinion is supported by substantial

----

[8]     Fibromyalgia is a common nonarticular disorder of unknown cause characterized by generalized aching (sometimes severe); widespread tenderness of muscles, areas around tendon insertions, and adjacent soft tissues; muscle stiffness; fatigue; and poor sleep. Diagnosis is . . . based on clinical criteria, including tenderness at some of the 18 specified tender points . . . . Most experts no longer require a specific number of tender points to make the diagnosis, as originally proposed (11 [or more] of 18).

Joseph J. Biundo, M.D., Fibromyalgia, The Merck Manual (May 2008), http://www.merckmanuals.com/professional/musculoskeletal_and_connective_tissue_disorders/bursa_muscle_and_tendon_disorders/fibromyalgia.html#v908031.

[9]Sedentary work involves lifting no more than ten pounds at a time; occasionally lifting or carrying articles like docket files, ledgers and small tools; sitting for about six hours out of an eight-hour work day; and walking or standing occasionally. 20 C.F.R. § 404.1567(a); Holifield v. Astrue, 402 F. App'x 24, 24 n.1 (5th Cir. 2010) (citing Ripley v. Chater, 67 F.3d 552, 557 n.25 (5th Cir. 1995)).

evidence and the opinion is not inconsistent with any other substantial opinion evidence. Citing <u>Newton</u>, 209 F.3d at 453, Bienemy contends that the ALJ erred by failing to address specifically every factor set out in 20 C.F.R. §§ 404.1527(d) and 416.927(d) when declining to give controlling weight to this opinion. She asserts that the ALJ incorrectly stated both that the functional limitations assigned by Dr. Lata were issues reserved to the Commissioner which are never entitled to controlling weight, and that Dr. Lata had classified Bienemy as "disabled."

Plaintiff is correct that Dr. Lata did <u>not</u> opine that Bienemy is disabled, which is an issue reserved to the Commissioner. However, the ALJ's procedural error in this regard did not prejudice plaintiff's substantive rights and was harmless, when the ALJ evaluated Dr. Lata's opinions in conjunction with all of the medical evidence. <u>Audler v. Astrue</u>, 501 F.3d 446, 448 (5th Cir. 2007); <u>Hammond</u>, 124 F. App'x at 851 & n.8.

As to plaintiff's other arguments, the ALJ did state that the functional limitations assigned by Dr. Lata "are an issue reserved to the Commissioner" and that medical source opinions on such issues are not accorded controlling weight. Even if this was an erroneous statement, the ALJ went on to say that he considered the opinion in light of the remainder of the evidence, and it is clear that he did so. (Tr. 17-18).

Although the opinion of the treating physician who is familiar with the claimant's impairments, treatments and responses should generally be accorded great weight in determining disability,

> the ALJ has sole responsibility for determining a claimant's disability status. [T]he ALJ is free to reject the opinion of any physician when the evidence supports a contrary conclusion. The treating physician's opinions are not conclusive. The opinions may be assigned little or no weight when good cause is shown. Good cause may permit an ALJ to discount the weight of a treating physician relative to other experts where the treating physician's evidence is conclusory, is unsupported by medically acceptable clinical, laboratory, or diagnostic techniques, or is otherwise unsupported by the evidence.

Newton, 209 F.3d at 455-56 (quotations and citations omitted).

The ALJ addressed Dr. Lata's opinion under these standards. The ALJ did not accord the opinion controlling weight because he found that it was inconsistent with and not fully supported by the record as a whole. He noted that Bienemy had only recently begun treatment at LSU Rheumatology Clinic, so that she had no longitudinal treatment history with Dr. Lata to support his opinions of her extreme functional limitations. The medical records contain notes from only one visit to the Rheumatology Clinic on October 7, 2009. (Tr. 269). The doctor's signature on that progress note does not appear to match that of Dr. Lata on the checklist form. (Tr. 272). Bienemy testified that she first saw Dr. Lata about two months before the hearing, which was held on November 6, 2009, and had seen him only once or twice. The records reveal that she was followed in

the LSU Dermatology Clinic for discoid lupus[10] and that her doctors referred her to the Rheumatology Clinic on June 17, 2009 to evaluate possible mixed connective tissue disease.[11] (Tr. 233). The ALJ was entitled to note Dr. Lata's documented length of treatment as a factor in weighing the credibility of his opinions on the checklist form. See 20 C.F.R. § 404.1502 ("Treating source means your own physician, psychologist, or other acceptable medical source who provides you, or has provided you, with medical treatment or evaluation and who has, or has had, an ongoing treatment relationship with you."); Hernandez v. Astrue, 278 F. App'x 333, 338 n.4 (5th Cir. 2008) ("Given that Dr. Molnar examined Hernandez only two times during the insured period (and only one time thereafter), the record does not reflect that they had an ongoing treatment relationship.").

---

[10]Discoid lupus erythematosus is a set of skin changes that can occur as part of systemic lupus erythematosus, with or without systemic involvement. Skin lesions begin as erythematous (abnormally red skin due to capillary congestion) plaques and progress to atrophic scars. The lesions cluster in light-exposed areas of the skin. Untreated lesions extend and develop central atrophy and scarring. There may be widespread scarring alopecia (hair loss). Rula A. Hajj-ali, M.D., Autoimmune Rheumatic Disorders: Systemic Lupus Erythematosus, The Merck Manual (Feb. 2008), http://www.merckmanuals. com/professional/musculoskeletal_and_connective_tissue_disorders/autoimmune_rheumatic_disorders/ systemic_lupus_erythematosus_sle.html#v904013.

[11]Mixed connective tissue disease is an uncommon, specifically defined, overlap syndrome characterized by clinical features of systemic lupus erythematosus, systemic sclerosis, and polymyositis. Rula A. Hajj-ali, M.D., Autoimmune Rheumatic Disorders: Mixed Connective Tissue Disease, The Merck Manual (Feb. 2008), http://www.merckmanuals.com/professional/musculoskeletal_and_ connective_tissue_disorders/autoimmune_rheumatic_disorders/mixed_connective_tissue_disease_mc td.html.

Even if the six pages of supplemental records from LSU Medical Center, which plaintiff failed to include in the administrative record, had been before the ALJ, those progress notes show that Bienemy first visited the Rheumatology Clinic on July 8, 2009, when she was seen by Tahir Abdullah Khan, M.D. She returned on August 26 and September 9, 2009, but the treating physician's signature is either missing or illegible on these visits. Exhibit A to Plaintiff's Motion to Correct the Transcript, Record Doc. No. 17-1, at pp. 1-3. Thus, even these additional records would not have demonstrated that Bienemy was treated by Dr. Lata for any significant length of time.

Appellate courts have often held that checklist opinions are unworthy of credence when they are not adequately supported by or are inconsistent with the medical records. See Peck v. Barnhart, 214 F. App'x 730, 738 (10th Cir. 2006) (The ALJ provided legitimate reasons for rejecting a doctor's opinion consisting "of checked boxes and circled numbers on a form" when the "opinion was not supported with additional explanation" nor justified by the doctor's treatment notes.); Holmstrom v. Massanari, 270 F.3d 715, 720 (8th Cir. 2001) ("the checklist format, generality, and incompleteness of the assessments limit their evidentiary value"); Johnson v. Apfel, 189 F.3d 561, 564 (7th Cir. 1999) (upholding ALJ's rejection of physician's check-box form when it was contradicted by evidence in the record); Mason v. Shalala, 994 F.2d 1058, 1065 (3d Cir. 1993) (quotation omitted) ("Form reports in which a physician's obligation is only to

check a box or fill in a blank are weak evidence at best. . . . [When] these so-called reports are unaccompanied by thorough written reports, their reliability is suspect . . . ."); Frey v. Bowen, 816 F.2d 508, 515 (10th Cir. 1987) ("Such evaluation forms, standing alone, unaccompanied by thorough written reports or persuasive testimony, are not substantial evidence."); cf. Larson v. Astrue, 615 F.3d 744, 751 (7th Cir. 2010) (citing Johnson, 189 F.3d at 564; Mason, 994 F.2d at 1065) ("Although by itself a check-box form might be weak evidence, the form takes on greater significance when it is supported by medical records. . . .  Here, there is a long record of treatment by [the treating physician] that supports his notations on the form.").  "That the form was completed by Dr. [Lata] only [two days] before the administrative hearing also raises the spectre that it was prepared in anticipation of litigation and is thus entitled to diminished weight." Price v. Astrue, No. 09-3511, 2010 WL 3523028, at *12 (E.D. La. July 23, 2010) (Chasez, M.J.) (citing Harrell v. Bowen, 862 F.2d 471, 482 (5th Cir. 1988)), report & recommendation adopted, 2010 WL 3523045 (E.D. La. Aug. 31, 2010) (Vance, J.).

Dr. Lata's opinion is not supported by any narrative comments or reference to plaintiff's treatment records.  Although the medical records support the diagnosis of fibromyalgia, mere diagnosis of an impairment does not establish a claimant's disability claims.  Bordelon v. Astrue, 281 F. App'x 418, 421 (5th Cir. 2008) (citing Hames v. Heckler, 707 F.2d 162, 165 (5th Cir. 1983)); McLendon v. Barnhart, 184 F. App'x 430,

431(5th Cir. 2006); Harris v. Barnhart, No. 02-55540, 2003 WL 21054733, at *2 (9th Cir. 2003); Estok v. Apfel, 152 F.3d 636, 640 (7th Cir. 1998); Jones v. Sullivan, 954 F.2d 125, 128 (3d Cir. 1991); Arroyo v. Sec'y of Health & Human Servs., 932 F.2d 82, 87-88 (1st Cir. 1991).  Plaintiff "'must show that she was so functionally impaired by [her diagnosed impairment] that she was precluded from engaging in any substantial gainful activity.'"  Bordelon, 281 F. App'x at 421 (quoting Hames, 707 F.2d at 165); accord Anthony v. Sullivan, 954 F.2d 289, 293 (5th Cir. 1992); Hamauei v. Astrue, No. 10-85, 2011 WL 802398, at *7 (E.D. La. Feb. 28, 2011) (Lemelle, J.) (quoting Hames, 707 F.2d at 165).

Pain may constitute a non-exertional impairment that can limit the jobs a claimant would otherwise be able to perform.  Beck v. Barnhart, 205 F. App'x 207, 212 (5th Cir. 2006); Carnahan v. Apfel, 247 F.3d 241, 2001 WL 43543, at *3 (5th Cir. 2001); Selders v. Sullivan, 914 F.2d 614, 618 (5th Cir. 1990).  However, "[t]he mere existence of pain is not an automatic ground for obtaining disability benefits."  Nugent v. Astrue, 278 F. App'x 423, 427 (5th Cir. 2008) (citing Cook v. Heckler, 750 F.2d 391, 395 (5th Cir. 1985)).  Pain constitutes a disabling condition "when it is constant, unremitting, and wholly unresponsive to therapeutic treatment."  Id. (quotation omitted); accord Doss v. Barnhart, 137 F. App'x 689, 690 (5th Cir. 2005); Chambliss v. Massanari, 269 F.3d 520, 522 (5th Cir. 2001); Falco v. Shalala, 27 F.3d 160, 163 (5th Cir. 1994).  Subjective

complaints of pain or other symptoms must be corroborated by objective medical evidence, Quijas v. Astrue, 298 F. App'x 391, 393 (5th Cir. 2008) (citing Chambliss, 269 F.3d at 522), and the alleged symptoms may be discounted when they are not consistent with the objective medical evidence. Brown v. Astrue, 344 F. App'x 16, 21 (5th Cir. 2009); Hernandez v. Astrue, 278 F. App'x 333, 340 (5th Cir. 2008) (citing Anthony, 954 F.2d at 295); Dunbar v. Barnhart, 330 F.3d 670, 672 (5th Cir. 2003).

It is within the ALJ's discretion to determine the disabling nature of a claimant's pain, and the ALJ's determination is entitled to considerable deference. Jenkins v. Astrue, 250 F. App'x 645, 647 (5th Cir. 2007); Chambliss, 269 F.3d at 522. Whether a claimant is able to work despite some pain is within the province of the administrative agency, and the agency's determination should be upheld if supported by substantial evidence. Jenkins, 250 F. App'x at 647; Chambliss, 269 F.3d at 522.

There is substantial evidence in the record that Dr. Lata's opinion regarding Bienemy's functional limitations is inconsistent with the other medical evidence. X-rays of plaintiff's right hip were normal, while x-rays of her right knee and spine revealed only mild degenerative changes. (Tr. 176-78, 246). Plaintiff was examined by a consulting internist, Miljana Mandich, on May 15, 2009. Although Bienemy complained of various aches and pains in her breast, back, legs and under her arms, she reported that she took only Motrin and aspirin for pain. (Tr. 210). Dr. Mandich observed that plaintiff

ambulated without difficulty and was able to walk on her heels and toes and squat and rise without support. On physical examination, Bienemy had normal range of motion in her neck, lower back and all joints; had a negative straight leg raising test; and displayed no muscle spasms or tenderness. Dr. Mandich found no abnormalities of bones, joints or muscle bulk, tone and strength. Bienemy had normal pulses, reflexes, sensation and grip strength bilaterally. Dr. Mandich concluded that plaintiff had multiple aches and pains with no positive physical findings, discoid lupus by history and asthma by history. (Tr. 212-13). Although Bienemy complained to Dr. Mandich that she could not work because of her aches and pains (Tr. 213), she also reported that she had stopped working on October 29, 2008, because the client for whom she had cared for 14 years died. (Tr. 214).

The records of plaintiff's ongoing treatment for discoid lupus by a family nurse practitioner and physicians at the LSU Dermatology Clinic indicate that she had flare-ups of pain, swelling and/or lesions when she ran out of medications, but that her prescribed medications often helped. (Tr. 185, 199, 203, 232, 238, 240). On October 7, 2009, her doctors in the Rheumatology Clinic, where she was being treated for fibromyalgia and discoid lupus, decreased her dosage of prednisone because she did not need such a high dosage and indicated that they would taper the dosage further at her next visit. (Tr. 269). A medical condition that can reasonably be remedied by surgery, treatment or medication

is not disabling.  Leblanc v. Chater, 83 F.3d 419, 1996 WL 197501, at *3 (5th Cir. 1996);

Johnson v. Bowen, 864 F.2d 340, 348 (5th Cir. 1988); Lovelace v. Bowen, 813 F.2d 55,

59 (5th Cir. 1987); Bridges v. Massanari, No. 00-2639, 2002 WL 202221, at *3 (E.D. La.

Feb. 7, 2002) (Vance, J.).

Plaintiff argues that the ALJ improperly accepted the findings of the initial agency

decision-maker, who is not a medical professional.  The ALJ stated in his decision that

he "accept[s] the findings of the state agency regarding the claimant's impairments.  The

condition was found non-disabling.  My independent assessment reaches the same result

as I find the claimant is not significantly limited by [her] impairment." (Tr. 18) (emphasis

added).  The ALJ clearly conducted an independent assessment.  The agency decision-

maker found that Bienemy had no exertional limitations and no severe impairments,

which would mean that she is not precluded from any level of work.  (Tr. 223, 230).

However, the ALJ found that she has the severe impairment of lupus, and he assessed her

with the more limited residual functional capacity for light work.

As he is obligated to do, the ALJ weighed conflicting medical opinions and

resolved the conflict in favor of the opinions of Dr. Mandich and against the checklist

form opinions of Dr. Lata, which were not substantially supported by the medical records

as a whole.  Escalante v. Astrue, 286 F. App'x 179, 180 (5th Cir. 2008) (citing Griego

v. Sullivan, 940 F.2d 942, 945 (5th Cir. 1991); Moore v. Sullivan, 919 F.2d 901, 905 (5th

Cir. 1990)). "[T]he ALJ is free to reject the opinion of <u>any physician</u> when the evidence supports a contrary conclusion." <u>Newton</u>, 209 F.3d at 455 (quotation omitted) (emphasis added); <u>see also</u> 20 C.F.R. § 404.1527(c)(2) ("If any of the evidence in your case record, including any medical opinion(s), is inconsistent with other evidence or is internally inconsistent, we will weigh all the other evidence and see whether we can decide whether you are disabled based on the evidence we have."). The ALJ therefore was not required to accord controlling weight to Dr. Lata's opinions.

Finally, plaintiff's argument that the ALJ must expressly consider the six factors in 20 C.F.R. § 404.1527 whenever the ALJ discounts a treating physician's opinion sweeps too broadly. The Fifth Circuit held in <u>Newton</u> that, "<u>absent</u> reliable medical evidence from a treating or examining physician controverting the claimant's treating specialist, an ALJ may reject the opinion of the treating physician only if the ALJ performs a detailed analysis of the treating physician's views under the criteria set forth in 20 C.F.R. § 404.1527(d)(2)." <u>Newton</u>, 209 F.3d at 453 (emphasis added). The six criteria are examining relationship, treatment relationship, supportability, consistency, specialization and "other factors." 20 C.F.R. § 404.1527(d)(2). The Fifth Circuit has clarified that "[w]e do not require consideration of each of the factors set out in <u>Newton</u> where, as here, 'there is competing first-hand medical evidence and the ALJ finds as a factual matter that one doctor's opinion is more well-founded than another.'" <u>Walker v.</u>

Barnhart, 158 F. App'x 534, 535 (5th Cir. 2005) (quoting Newton, 209 F.3d at 458); accord Thibodeaux v. Astrue, 324 F. App'x 440, 445 (5th Cir. 2009) (citing Newton, 209 F.3d at 453, 456).

In this case, the ALJ considered the shortness of Dr. Lata's treating relationship and found that it was too brief to warrant controlling weight for his opinions. As discussed above, Dr. Lata's opinions were controverted by reliable medical evidence, which reflects on both the consistency and supportability factors. Thus, the ALJ adequately explained his reasons and did not err by declining to accord controlling weight to Dr. Lata's opinions.

### 2.      The ALJ did not err in assessing plaintiff's credibility.

The ALJ found that plaintiff's subjective complaints of chronic pain, skin rashes and shortness of breath were partially credible, but "she has not convinced me that she is totally disabled by her conditions." (Tr. 17). The ALJ determined that her alleged functional limitations were not credible to the extent they conflicted with his residual functional capacity assessment. Bienemy argues that the ALJ failed to explain his reasons adequately, as required by 20 C.F.R. § 404.1529 and Social Security Ruling 96-7p, and that his credibility evaluation lacks substantial support in the record.

Plaintiff also argues that she need not "convince" the ALJ that she is "totally disabled." On the contrary, she "bears the burden of proving that . . . she suffers from

a disability" under the first four parts of the sequential inquiry. Perez, 415 F.3d at 461.

Determining the credibility of her "subjective evidence of pain and disability" is a

necessary part of the ALJ's consideration of the evidence. Id. at 462.

Regarding the effect of 20 C.F.R. § 404.1529 and Social Security Ruling 96-7p

on an ALJ's credibility findings, the Fifth Circuit has held that the ALJ is bound to

explain his reasons for rejecting a claimant's subjective complaints, but "he is not

required to 'follow formalistic rules in his articulation.'" Hernandez v. Astrue, 278 F.

App'x 333, 339 (5th Cir. 2008) (quoting Falco, 27 F.3d at 164). The ALJ has the

responsibility to evaluate the credibility of witnesses, Masterson v. Barnhart, 309 F.3d

267, 272 (5th Cir. 2002), and "credibility conclusions are 'precisely the kinds of

determinations that the ALJ is best positioned to make.'" Spruill v. Astrue, 299 F. App'x

356, 358 (5th Cir. 2008) (quoting Falco, 27 F.3d at 164). Thus, the ALJ's credibility

evaluation is entitled to considerable deference by this court. McKnight v. Astrue, 340

F. App'x 176, 181 (5th Cir. 2009); Bedford v. Astrue, 236 F. App'x 957, 962 (5th Cir.

2007). The ALJ's explanation of his reasons for finding plaintiff not entirely credible is

all that is required. James J. Flanagan Stevedores, Inc. v. Gallagher, 219 F.3d 426, 430

& n.8 (5th Cir. 2000) (citing Falco, 27 F.3d at 163); Godbolt v. Apfel, No. 98-1680, 1999

WL 179476, at *9 (E.D. La. Mar. 31, 1999) (Vance, J.).

The ALJ explained why he found that Bienemy's subjective symptoms and alleged limitations were not credible and were inconsistent with the clinical and objective findings, including her testimony

> that she has "good days" where she is not as limited in her ability to perform self-care and/or activities of daily living. She has limited lifestyle by choice. She recently entered treatment at the LSU Rheumatology Clinic and medications are prescribed. It appears [that] "flares" of fibromyalgia pain, skin rashes, and shortness of breath subside after a week or so. She has not required admission or emergency room care.

(Tr. 17-18). The ALJ's findings are substantially supported by the record.

In addition to her testimony that she has good days, Bienemy stated in her Function Report on March 17, 2009 that she takes care of her own personal needs and that, on good days, she cooks, gets the children ready for school, cleans house, washes clothes, irons and prepares her own meals, all of which takes about six hours per day, and that little had changed in her ability to cook since her alleged onset date. She listed lifting and transporting her client, mopping and washing the car as things she can no longer do. (Tr. 125-27). She stated that she goes outside for two hours per day, drives a car and shops by herself. (Tr. 128). Although she testified at one point that she can only sit for an hour before her tailbone and hip go numb, she also testified that she sits all day, except when she is asleep, and that she only has problems with sitting "every once in a while."

The medical records indicate that Bienemy was being treated for discoid lupus, but she continued to work despite some symptoms until her long-term client died. (Tr. 164, 194-207). She testified that she stopped working because of her constant pain after an incident when she went with a client to the French Quarter and walked from Elysian Fields Avenue to Harrah's Casino. However, she told Dr. Mandich that she stopped working in October 2008 because her client had died (Tr. 211), and she said in her written Function Report that she lost her job on October 29, 2008, when her patient died. (Tr. 129). Similarly, she stated in her Disability Report that her last day of work was on October 29 and she became unable to work on October 30, 2008 because "my patient passed away and then my condition . . . worse[ned]." (Tr. 113). On November 5, 2008, plaintiff's dermatologist noted that, other than a few skin problems, plaintiff was "healthy" and "well-appearing." (Tr. 189). Bienemy did not seek treatment again until April 29, 2009, when she complained that she had multiple joint pains as a result of walking a lot two days earlier while pushing a client in a wheelchair and stopping at intervals to lift the client, who weighed more than 200 pounds. (Tr. 185). These contradictions in the record support the ALJ's findings regarding her credibility. Bryan v. Halter, 252 F.3d 1357, 2001 WL 422878, at *2 (5th Cir. Apr. 5, 2001) (citing 20 C.F.R. §§ 404.1530, 416.930; Wren v. Sullivan, 925 F.2d 123, 128 (5th Cir. 1991)); Austin v. Apfel, 205 F.3d 1338, 1999 WL 1338401, at *1 (5th Cir. 1999).

Other medical records support the ALJ's credibility findings. Plaintiff's treating physicians decided on October 7, 2009 to decrease the dosage of her prednisone, which she had started on July 13, 2009 (Tr. 235), because she did not need such a high dosage. (Tr. 269). Nothing in the medical records supports plaintiff's testimony that she was falling "all the time" when she went to the doctor immediately after her client died, or at any time thereafter. On April 29, 2009, she specifically reported that she had walked a lot two days earlier, but did not mention any falling. (Tr. 185). Dr. Mandich's report, discussed in the preceding section of this report and recommendation, also supports the ALJ's determination that plaintiff's allegations of severe pain and functional limitations were not fully credible.

"The ALJ properly considered the record as a whole, including the available medical evidence and the nature and extent of the plaintiff's daily activities, in determining that the plaintiff's subjective complaints were not fully credible." Hoelck v. Astrue, 261 F. App'x 683, 686 (5th Cir. 2008) (citing Hollis, 837 F.2d at 1384-85; Leggett v. Chater, 67 F.3d 558, 565 (5th Cir. 1995)). Accordingly, this assignment of error lacks merit.

CONCLUSION

The ALJ was not required to give controlling weight to the form checklist opinions of Dr. Lata. The ALJ adequately explained his assessment of plaintiff's credibility, which is supported by substantial evidence.

**RECOMMENDATION**

For the foregoing reasons, IT IS RECOMMENDED that plaintiff's complaint be DISMISSED WITH PREJUDICE.

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation within fourteen (14) days after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court, provided that the party has been served with notice that such consequences will result from a failure to object. Douglass v. United Servs. Auto. Ass'n, 79 F.3d 1415, 1430 (5th Cir. 1996) (en banc) (citing 28 U.S.C. § 636(b)(1)).[12]

New Orleans, Louisiana, this ___13th___ day of February, 2012.

_____
JOSEPH C. WILKINSON, JR.
UNITED STATES MAGISTRATE JUDGE

---

[12]Douglass referred to the previously applicable ten-day period for the filing of objections. Effective December 1, 2009, 28 U.S.C. § 636(b)(1) was amended to extend the period to fourteen days.